# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TYRONE GREEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 18-93 Erie** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SECRETARY WETZEL, et al.,** | ) | **Magistrate Judge Richard A. Lanzillo** |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff Tyrone Green ("Plaintiff"), an inmate formerly incarcerated at the State

Correction Institution at Albion ("SCI-Albion"), initiated this civil rights action pursuant to 42

U.S.C. § 1983 on March 21, 2018.[1]  ECF No. 1.  Plaintiff's motion to proceed *in forma pauperis*

was granted on April 11, 2018, and his Complaint was docketed the same day.  ECF Nos. 4, 5.

In his Complaint, Plaintiff asserts a host of constitutional, statutory, and common law claims

including retaliation, excessive force, cruel and unusual punishment, denial of medical care, lack

of due process, failure to protect, violations of the Americans with Disabilities Act, and state tort

claims based on supervisory liability and medical negligence.  ECF No. 5 ¶ 1.  Plaintiff identifies

the following individuals as Defendants: Secretary Wetzel, Counselor Santos, Psychologist

Galbreathe, Psychologist Anderson, Deputy Adams, Deputy Frantz, Mrs. Kusiak, Lt. Dube, Mr.

Bennek, Officer Crum, Mrs. Deplatchet, Sergeant Ruff, Officer Arnold, Officer Diraimo,

Captain Sissem, Heather Dechantz, Superintendent Clark, Mrs. Smock, Mr. Snider, Officer

---

[1] Plaintiff is currently incarcerated at SCI-Phoenix.

McClelland, Dr. Halligan, PA Stroup, PA Chuzie-McDowell, Psychiatrist Gottesman,[2]

Psychiatrist Renburg, Correct Care Solution LLC ("Correct Care"), Mental Health of America,

and Dr. Herbic.[3]  Id. ¶¶ 5-30.

Presently pending before the Court are partial motions to dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(6) filed by both the Commonwealth Defendants (ECF No. 38) and

the Medical Defendants (ECF No. 43).[4]  Plaintiff responded to both motions on November 23,

2018.  ECF No. 49.   For the reasons set forth below, both motions will be granted.[5]

I.      **Factual Background**

On August 9, 2017, Plaintiff, a black male with a documented history of suicide attempts

and self-harm, returned to SCI-Albion after having been temporarily transferred to another

institution to attend a civil trial in which he was the plaintiff.  ECF No. 5 ¶ 32.  Plaintiff avers

that it was "widely known" by prison officials that his stint away from SCI-Albion was

occasioned by his lawsuit against the Pennsylvania Department of Corrections ("DOC").  Id. ¶¶

31-33.  According to Plaintiff, this knowledge stemmed, in part, from the fact that inmate

medical charts at SCI-Albion contain a "litigation" section listing all prison and medical staff

that have been sued by that inmate.  Id. ¶ 33.

---

[2] Plaintiff's Complaint incorrectly identifies Dr. Gottesman as "Godison."

[3] Wetzel, Santos, Galbreathe, Anderson, Adams, Frantz, Kusiak, Dube, Bennek, Crum, Deplatchet, Ruff, Arnold, Diraimo, Sissem, Deshantz, Clark, Smock, Snider, and McClelland are collectively referred to as the "Commonwealth Defendants."  Correct Care, Halligan, Herbic, Chuzie-McDowell and Stroup are collectively referred to as the "Medical Defendants."  The remaining Defendants will be identified by their surnames.

[4] A third motion to dismiss filed by Doctors Gottesman and Renberg (ECF No. 15) will be addressed in a separate Memorandum Opinion.

[5] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

On the same day that he arrived back at SCI-Albion, Plaintiff visited the prison's infirmary to seek treatment for a back injury. Id. ¶ 34. While in the infirmary, Plaintiff began to cough and spit blood, but Chuzie-McDowell and Stroup refused to evaluate him. Id. The following morning, Stroup informed Plaintiff that he could not provide him treatment because Plaintiff had named him as a defendant in a pending lawsuit. Id. ¶ 35. When Dr. Halligan arrived, she accused Plaintiff of lying about his injuries, discontinued his pain and psychiatric medications, and immediately discharged him. Id. ¶ 36. Plaintiff informed Superintendent Clark of this exchange and Clark said he would look into it. Id. ¶ 37.

Plaintiff received an x-ray the following day, but otherwise received no treatment as he continued to spit blood and suffer headaches and chest pains over the next "7 to 10 days." Id. ¶ 38. Plaintiff's family and several corrections officers attempted to contact medical on Plaintiff's behalf to no avail. Id. ¶¶ 38-39. Halligan, Smock and Deschantz all refused to schedule follow-up appointments for Plaintiff. Id. ¶ 40.

On August 16, 2017, Plaintiff and another inmate were returning to their housing unit when they overheard Dube state, "Those two ni**ers should be killed." Id. ¶ 41. Bennek walked in front of Plaintiff, gripped his keys in his hand, and said "Let's start with this one first." Id. Other inmates came to Plaintiff's aid and he was able to leave the scene. Id.

On August 30, 2017, Plaintiff attended a Psychiatric Review Team ("PRT") meeting with Galbreathe, Gottesman, Santos, and a non-defendant, Nurse Plott. Id. ¶ 42. Plaintiff explained to the PRT that he ought to be housed in an institution closer to home because of his mental health disorders, but Santos acted in a sarcastic manner and stated that Plaintiff had been blackballed from his home region. Id.

The following day – August 31, 2017 – Crum informed Plaintiff that he would be moving into a different cell, Cell 31, which was noisy and had "urine, feces, and bloody bandages" on the floor. Id. ¶ 43. Plaintiff informed Crum that he would harm himself if forced to move into Cell 31, but Crum ignored him. Id. Ruff and Deplatchet ignored Plaintiff's plea to override the cell move and/or place him in a Psychiatric Observation Cell ("POC"). Id. ¶ 44. Galbreath, the Unit Psychologist, visited Plaintiff and informed him that he had to move despite his threats of self-harm. Id. ¶ 45.

Upon moving into Cell 31, Crum began to antagonize Plaintiff by telling him to kill himself and by pointing out that there was a razor blade on the floor of the cell. Id. Plaintiff began using the razor blade to cut himself. Id. Ruff and Crum ordered him to stop, handcuffed him, and began punching him in the head and neck and slamming his face into walls. Id. Arnold and Diraimo then grabbed Plaintiff's arms and hyperextended them over his head before slamming him into the ground. Id. Instead of placing Plaintiff on suicide watch, several defendants, including Sissem and Anderson, moved him into the Restricted Housing Unit ("RHU") and then back into Cell 31. Id.

On September 5, 2017, Plaintiff began cutting himself in his cell again. Id. ¶ 46. After being placed on suicide watch, Plaintiff informed Renberg, Adams, and Anderson that he would continue to harm himself if housed in Cell 31. Id. Despite Plaintiff's warning, Renberg, Adams and Anderson forced him to return to Cell 31. Id. Plaintiff began cutting himself with a double-bladed razor while Renberg, Adams and Anderson looked on. Id. Deplatachet, Santos, Anderson and Galbreathe "continuously referred to Plaintiff's civil trial as the cause for the chain of events." Id.

On September 11, 2017, Plaintiff visited the prison infirmary seeking treatment for the injuries he had sustained at the hands of Crum and Ruff the prior week. Id. ¶ 50. Chuzie-McDowell behaved in a hostile manner and ordered Plaintiff to get out of the infirmary. Id. When informed of the incident, Clark promised Plaintiff that he would make an appointment for Plaintiff to see another physician's assistant, but he never did. Id. As a result, Plaintiff's injuries – including an "athlete foot fungus" that apparently covers his entire body – never received treatment. Id.

On September 13, 2017, Santos allegedly violated Plaintiff's due process rights by conducting an improper investigation into one of Plaintiff's grievances. Id. ¶ 57. Specifically, Santos pressured Plaintiff into withdrawing the grievance by threatening unspecified retaliation. Id. Snider covered up for Santos by falsifying the withdrawal form. Id.

On November 26, 2017, Plaintiff borrowed a typewriter from a white inmate, John O'Hara. Id. ¶ 59. McClelland confiscated the typewriter from Plaintiff and issued him a misconduct. Id. When Plaintiff asked why O'Hara had not also received a misconduct, McClelland responded, "O'Hara doesn't file grievances like you, and us white guys have to stick together." Id.

Finally, Snider, Galbreathe, and Clark took away Plaintiff's single-cell designation on February 14, 2018, without providing due process.

In addition to the specific incidents discussed above, Plaintiff generally avers that Clark, Frantz, Renberg, Ruff, Crum, Galbreathe, and Deplatchett failed to provide adequate treatment for his mental health problems and failed to protect him from harming himself. Id. ¶ 47. Plaintiff states that Defendants should have kept him in isolation, housed him in the mental

health unit, placed him on razor restriction, performed a psychiatric review, and effectuated visits from mental health staff following any incident of self-harm.  Id.

II.    **Standards of Review**

   1. *Pro se* **Litigants**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520-521 (1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C. Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990) (same).

   2.  **Motion to dismiss**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the

merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in Conley v. Gibson, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. Twombly, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the Twombly/Iqbal line of cases, the Third Circuit has articulated the following three-step approach:

First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

## III. Analysis

Plaintiff maintains that the Defendants' alleged misconduct violated the First, Eighth and Fourteenth Amendments. Plaintiff also makes cursory references to the Americans with Disabilities Act, supervisory liability, and medical negligence. Unfortunately, Plaintiff failed to list his legal claims in separately numbered counts, forcing the Court to scrutinize his pleading in an attempt to determine which claims he intended to assert against each Defendant. Based on his averments, Plaintiff appears to be asserting the following claims:

1. Retaliation and denial of medical care in violation of the First and Eighth Amendments against McDowell, Stroup, and Halligan stemming from Plaintiff's infirmary visit on August 9, 2017

2. Retaliation in violation of the First Amendment against Dube and Bennek based on the August 16, 2017 incident

3. Retaliation in violation of the First Amendment against Galbreathe and Santos based on the PRT meeting held on August 30, 2017

4. Retaliation and cruel and unusual punishment in violation of the First and Eighth Amendments against Crum, Ruff, Deplatchet, Galbreathe, Sissem, Anderson, Adams and Santos based on the cell transfer on August 31, 2017

5. Failure to protect in violation of the Eighth Amendment against Crum, Galbreathe, Adams, Anderson, Deplatchet and Santos based on their disregard of his threats to harm himself if placed in Cell 31

6. Denial of medical care in violation of the Eighth Amendment against Renberg based on her failure to adequately treat his mental health condition

7. Excessive force in violation of the Eighth Amendment against Ruff, Crum, Arnold and Diraimo based on the August 31, 2017 incident in which they allegedly handcuffed and attacked Plaintiff

8. Denial of medical care in violation of the Eighth Amendment against Smock, Halligan and Deshantz based on their refusal to schedule follow-up appointments

9. Denial of medical care in violation of the Eighth Amendment against Chuzie-McDowell based on her refusal to treat Plaintiff on September 11, 2017

10. Lack of due process in violation of the Fourteenth Amendment against Santos and Snider based on falsified grievances

11. Lack of due process in violation of the Fourteenth Amendment against Snider, Galbreathe and Clark based on the removal of Plaintiff's single-cell status

12. Racial discrimination in violation of the Eighth Amendment by McClelland based on the November 26, 2017 incident

13. State tort supervisory liability against Frantz and Clark

14. Professional medical negligence

15. Violations of the Americans with Disabilities Act

In an effort to narrow the issues prior to discovery, Defendants primarily attack those claims that they perceive as extraneous, frivolous, or factually unsupported. To that end, the Commonwealth Defendants seek dismissal of the retaliation claim against Dube and Bennek (Claim 2, above), the retaliation claim against Galbreathe and Santos (Claim 3), the due process claim against Santos and Snider (Claim 10), the state tort supervisory liability claim (Claim 13), and the ADA claim (Claim 15). ECF No. 39 at 2. The Medical Defendants seek dismissal of Plaintiff's ADA claim (Claim 15), any Fourteenth Amendment due process claims based on

allegedly inadequate medical care, and the medical negligence claim.  ECF No. 44.  The parties

also request that Secretary Wetzel and Michael Herbik, the medical director of Correct Care,

each be dismissed from this action entirely for lack of personal involvement.  ECF Nos. 39, 44.

Each argument will be addressed in turn.

### A.  Lack of Personal Involvement (Wetzel and Herbik)

As an initial matter, Defendants contend that Plaintiff has failed to allege any misconduct

on the part of either Wetzel or Herbik.  It is axiomatic that a Section 1983 Plaitniff "must show

that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights."  Kirk

v. Roan, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (quoting Evancho v. Fischer, 423 F.3d 347,

353 (3d Cir. 2006)).  Because there is not a single factual allegation in the Complaint concerning

Wetzel or Herbik, these Defendants must be dismissed from this action.

To the extent that Plaintiff may have intended to assert claims against Wetzel or Herbik

based solely on their supervisory roles at the DOC and Correct Care, respectively, such claims

must also fail.  It is axiomatic that Section 1983 liability cannot be predicated solely on the

theory of *respondeat superior*.  Rizzo v. Goode, 423 U.S. 362 (1976). See also Monell v.

Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in

violation of constitutional rights may not be held liable on a theory of vicarious liability merely

because the superior had a right to control the line officer's actions).  Rather, liability against a

supervising official must still be based upon "personal involvement in the alleged wrongs."

Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998).  No such allegations exist.

### B.  Americans with Disabilities Act (All Defendants)

Although Plaintiff's Complaint contains a passing reference to the Americans with

Disabilities Act ("ADA"), he makes no attempt to state a claim for relief under that Act.  In

pertinent part, Title II of the ADA provides that "no individual with a disability shall, by reason

of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity or be subjected to discrimination by any such entity."

42 U.S.C. § 12132.  To state a claim under Title II, "a plaintiff must show (a) that he has a

disability, (b) that he was either excluded from participation in or denied the benefits of some

entity's services, programs, or activities, and (c) that such exclusion, denial of benefits, or

discrimination was by reason of h[is] disability."  Matthews v. Pennsylvania Dept. of Corr., 613

Fed. Appx. 163, 167 (3d Cir. 2015).  Nothing in the Complaint implicates any of these elements.

Moreover, "[n]early every court that has addressed the question appears to have held that Title II

does not authorize suits against government officers in their individual capacities."  Williams v.

Hayman, 657 F.Supp.2d 488, 502 (D.N.J. 2008); see also Bowens v. Wetzel, 674 Fed. Appx.

133, 136 (3d Cir. 2017) ("[T]he District Court could have properly followed the holdings of

those circuits which have concluded that there is no individual damages liability under Title II of

the ADA, which provides an additional basis to affirm the dismissal of this claim.").  Plaintiff's

ADA claim is properly dismissed.

### C.    Medical Negligence (Medical Defendants)

Although it is unclear from the Complaint, it appears that Plaintiff may be asserting a

state law claim for medical negligence.  To the extent that this is the case, his claim must be

dismissed because he has failed to file a certificate of merit.

Rule 1042.3 of the Pennsylvania Rules of Civil Procedure requires a plaintiff in a medical

malpractice action to file a certificate of merit with the complaint, or within 60 days after the

filing thereof, attesting that there is a reasonable probability that the medical care described in

the complaint fell outside of acceptable professional standards.  The Third Circuit has held that

11

Rule 1042.3 is substantive law that must be applied by federal courts under <u>Erie R.R. v.</u>

<u>Thompkins</u>, 304 U.S. 64 (1983).  <u>See</u> <u>Liggon-Redding v. Estate of Sugarman</u>, 659 F.3d 258,

262-64 (3d Cir. 2011).  Thus, for purposes of a motion to dismiss, the Pennsylvania certificate of

merit rule is applied as "controlling, substantive state law."  <u>Scaramuzza v. Sciolla</u>, 345

F.Supp.2d 508, 509-10 (E.D. Pa. 2004).

"[A] plaintiff's failure to comply with Rule 1042.3 requires dismissal of any malpractice

claim."  <u>Bennett v. PrimeCare Medical, Inc</u>., 2018 WL 6072126, at *10 (M.D. Pa. Sept. 14,

2018).  However, "Pennsylvania practice expressly provides plaintiffs with notice of Rule

1042.3's requirements and an opportunity to cure any failure to file a certificate of merit before a

matter is dismissed."  <u>TranSystems Corp. v. Hughes Associates, Inc</u>., 2014 WL 6674421, at *5

(M.D. Pa. Nov. 24, 2014); <u>Schmigel v. Uchal</u>, 800 F.3d 113, 124 (3d Cir. 2015) ("The condition

of thirty days' notice prior to seeking dismissal of an action for failure to comply with the

[certificate of merit] regime is substantive and must be applied in federal court.").

In the instant case, the Medical Defendants provided Plaintiff with the requisite notice on

October 30, 2018.  <u>See</u> ECF No. 43.  Plaintiff failed to file the required certificate.  Under such

circumstances, dismissal is appropriate.  <u>Bennett</u>, 2018 WL 6072126, at *10.

**D. Fourteenth Amendment Due Process Claim - Inadequate Medical Care (Medical Defendants)**

Because of the scatter-shot manner in which Plaintiff articulates his claims, it is difficult

to determine which of the constitutional provisions invoked in his Complaint – the First, Eighth,

and Fourteenth - applies to any particular incident.  To the extent that Plaintiff is attacking the

adequacy of his medical care under both the Eighth and Fourteenth amendments, the Fourteenth

Amendment claim must be dismissed pursuant to the more-specific-provision rule.

As explained by the United States Supreme Court in United States v. Lanier, the more-specific-provision rule provides that, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." 520 U.S. 259, 272 n.7 (1997). See also Albright v. Oliver, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."). Pursuant to this principle, allegations of inadequate medical care in the prison context must be analyzed "under the more specific Eighth Amendment standards set forth in Estelle v. Gamble, 429 U.S. 97, 104 (1976)," rather than the more general standards applicable to Fourteenth Amendment claims. Classen v. Nutter, 2017 WL 6017341, at *7 (E.D. Pa. Dec. 4, 2017). Accordingly, Plaintiff's Fourteenth Amendment claim must be dismissed as to any allegations of inadequate medical treatment. See, e.g., Davis v. Pennsylvania Dept. of Corr., 2016 WL 1072911, at *7 (W.D. Pa. Mar. 18, 2016) (dismissing substantive due process claims regarding plaintiff's medical care because such claims "are more appropriately analyzed under the more specific Eighth Amendment provision than under the more general and open-ended standard of substantive due process").

### E. Fourteenth Amendment Due Process Claim – False Grievances (Santos and Snider)

In the tenth claim for relief outlined above, Plaintiff alleges that Santos pressured him into withdrawing one of his grievances by threatening him with some form of unspecified retaliation. Plaintiff also contends that Santos should not have been investigating that grievance in the first place (because he was involved in the underlying conduct) and that Snider covered up

for Santos' misconduct by falsifying the form to make it appear as if Snider, rather than Santos, had conducted the investigation. It is well-established, however, that "[a]ccess to prison grievance procedures is not a constitutionally-mandated right." Williams v. Armstrong, 566 Fed. Appx. 106, 109 (3d Cir. 2014). Therefore, "any allegations of improprieties in the handling of [a] grievance do not state a cognizable claim under § 1983." Id. Plaintiff's claim that Defendants' grievance responses violated his due process rights is subject to dismissal on this basis.

### F. Retaliation (Dube, Bennek, Galbreathe and Santos)

In order to establish illegal retaliation for engaging in protected conduct, a plaintiff must allege that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (citing Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001)). An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). Retaliatory motive can be inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link. Id. (citing Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)).

Plaintiff's Complaint is replete with allegations of retaliation, most of which he attributes to his history of civil litigation with the DOC. At this stage in the proceedings, Defendants are only challenging Plaintiff's allegations that Dube and Bennek threatened him with physical harm and that Santos and Galbreathe treated him "sarcastically" during his PRT meeting.

14

### 1. Dube and Bennek

With respect to Dube and Bennek, Plaintiff's allegations are restricted to a single incident in which they used a racial slur, threatened to kill him, and gestured at him in a threatening manner. However, the Third Circuit has consistently maintained that verbal threats, no matter how heinous, "do not constitute adverse action for the purposes of establishing a prima facie retaliation claim." Chruby v. Kowaleski, 534 Fed. Appx. 156, 161 (3d Cir. 2013); Dunbar v. Barone, 487 Fed. Appx. 721, 723 (3d Cir. 2012) (finding no adverse action based on allegation that Defendants called Plaintiff a "marked man" and threatened that his "days were numbered"); Burgos v. Canino, 358 Fed. Appx. 167 (3d Cir. 2007) ("Absent any allegation of physical harm, the defendants' verbal threats do not amount to a constitutional violation."). In the absence of any physical contact, Dube and Bennek's verbal threats and intimidation simply do not rise to the level of an adverse action. Chruby, 534 Fed. Appx. at 161. This is fatal to Plaintiff's retaliation claim.

### 2. Galbreathe and Santos

Plaintiff next alleges that, during a meeting with his psychiatric team, he became upset and complained that he had never been housed in an institution closer to his home. Santos interrupted Plaintiff and stated sarcastically, "Then you're good then, right?" Santos tried to end the meeting, prompting another PRT member to intervene and ask why Plaintiff had never been housed closer to home. Santos responded that he believed Plaintiff had been "blackballed" from his home region. Galbreathe "sat silent" while this exchange occurred. ECF No. 5 ¶ 42.

Plaintiff's attempt to distill this exchange into a constitutional retaliation claim is unavailing. Because verbal threats and comments are not adverse actions, Santos' sarcastic comments during Plaintiff's meeting are not actionable. Chruby, 534 Fed. Appx. at 161.

Critically, Plaintiff does not allege that Santos or Galbreathe had any role in the decision to "blackball" him from his home region; he simply alleges that Santos informed him of that decision. None of these allegations amounts to an adverse action or is sufficient to establish causation.

### G. Supervisory Liability (Commonwealth Defendants)

Finally, Plaintiff attempts to assert a "state tort of . . . supervisor liability" claim against Clark and Frantz based on their failure to rectify the deficiencies in Plaintiff's health care. Even if such a claim existed, it is well-established that employees of the Commonwealth of Pennsylvania are entitled to sovereign immunity from common law tort claims so long as they are acting within the scope of their duties. See PA CONST. Art. 1, § 11; 1 Pa. C.S.A. § 2310.[6] This grant of immunity "applies to Commonwealth employees in both their official and individual capacities." Larsen v. State Employees' Ret. Sys., 553 F.Supp.2d 403, 420 (M.D. Pa. 2008).

There is nothing in the Complaint to suggest that Clark and Frantz were not acting within the scope of their employment at all pertinent times. See Mitchell v. Luckenbill, 680 F.Supp.2d 672, 682 (M.D. Pa. 2010) (identifying the requirements for an action to fall within the scope of employment under Pennsylvania law). Consequently, Clark and Frantz are entitled to the protections afforded by sovereign immunity. McGrath v. Johnson, 67 F.Supp.2d 499, 511 (E.D. Pa. 1999) ("The Department of Corrections is an agency of the Commonwealth and the defendants, as employees of an agency of the Commonwealth, are entitled to the protection

---

[6] There are nine specifically delineated exceptions to sovereign immunity, 42 Pa. C.S.A. § 8522, none of which apply to this case. Those exceptions are: 1) vehicle liability; 2) medical-professional liability; 3) care, custody, or control of personal property; 4) Commonwealth real estate, highways and sidewalks; 5) potholes and other dangerous conditions; 6) care, custody or control of animals; 7) liquor store sales; 8) National Guard activities; and 9) toxoids and vaccines. 42 Pa. C.S.A. § 8522.

afforded by sovereign immunity.") (citing <u>Maute v. Frank</u>, 657 A.2d 985, 986 (Pa. Super. Ct. 1995) (state prison officials enjoy sovereign immunity).  Plaintiff's state law tort claim for supervisory liability will be dismissed.

## V.    CONCLUSION

For all of the foregoing reasons, Defendants' partial motions to dismiss (ECF Nos. 38, 43) are each GRANTED.  The following claims are dismissed from this action:

1) Plaintiff's ADA claim;

2) Plaintiff's medical negligence claim[7];

3) Plaintiff's Fourteenth Amendment due process claim based on inadequate medical treatment;

4) Plaintiff's Fourteenth Amendment due process claim against Santos and Snider;

5) Plaintiff's First Amendment retaliation claim against Dube and Brekker based on the August 16, 2017 incident;

6) Plaintiff's First Amendment retaliation claim against Galbreathe and Santos based on the August 30, 2017 PRT meeting; and

---

[7] Although Rule 1042.3 compels dismissal of this claim, the Court must do so without prejudice.  The entry of a judgment non pros by the prothonotary, which is the outcome contemplated by Rule 1042.3, has no precise analogue in the federal system.  In this context, federal courts have held that "[u]nlike dismissal with prejudice, the entry of non pros is a default judgment that does not bar the plaintiff from commencing another suit based upon the same cause of action." <u>Bresnahan v. Schenker</u>, 498 F. Supp. 2d 758, 762 (E.D. Pa. 2007) (quoting <u>Scaramuzza v. Sciolla</u>, 345 F. Supp. 2d 508, 511 (E.D. Pa. 2004)).  "Moreover, under Pennsylvania law, a party can seek relief from a non pros dismissing a case under Rule 1042.3 by coming into compliance with the rule, showing that there is a meritorious malpractice cause of action, and providing a reasonable explanation or legitimate excuse for the earlier non-compliance." <u>Lundy v. Monroe Cty. Corr. Facility</u>, 2017 WL 9362913, *6 (M.D. Pa. Dec. 18, 2018) (citing <u>Womer v. Hilliker</u>, 908 A.2d 269 (Pa. 2006); Pa. R. Civ. P. 3051)).  Therefore, "[w]hen a plaintiff has failed to submit a certificate of merit or otherwise indicated that he has retained an expert witness, it is appropriate for a federal district court to dismiss his professional malpractice claim without prejudice." <u>Donnelly v. O'Malley & Langan, P.C</u>., 2009 WL 3241662 (M.D. Pa. Oct. 2, 2009) (citations omitted) <u>aff'd as modified sub nom</u>., 370 Fed. Appx. 347 (3d Cir. 2010).  Plaintiff may yet have recourse on this claim if he can file an appropriate COM and "demonstrate a reasonable explanation or legitimate excuse for untimely filing." <u>Ramos v. Quien</u>, 631 F. Supp. 2d 601, 612 (E.D. Pa. 2008).

7) Plaintiff's state law tort claim for "supervisory liability."

Consistent with the foregoing, Defendants Wetzel, Frantz, Bennek, Dube, and Herbek are dismissed from this action, with prejudice, as no claims remain against them.

/s/ Richard A. Lanzillo
RICHARD A. LANZILLO
United States Magistrate Judge

Dated: March 29, 2019