# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRONE GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 18-93 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| SECRETARY WETZEL, et al., | ) | Magistrate Judge Richard A. Lanzillo |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Tyrone Green ("Plaintiff"), an inmate formerly incarcerated at the State Correction Institution at Albion ("SCI-Albion"), initiated this civil rights action pursuant to 42 U.S.C. § 1983 on March 21, 2018.[1] ECF No. 1. Plaintiff's motion to proceed *in forma pauperis* was granted on April 11, 2018, and his Complaint was docketed the same day. ECF Nos. 4, 5. In his Complaint, Plaintiff asserts a host of constitutional, statutory, and common law claims including retaliation, excessive force, cruel and unusual punishment, denial of medical care, lack of due process, failure to protect, violations of the Americans with Disabilities Act, and state tort claims based on supervisory liability and medical negligence. ECF No. 5 ¶ 1. Plaintiff identifies the following individuals as Defendants: Secretary Wetzel, Counselor Santos, Psychologist Galbreathe, Psychologist Anderson, Deputy Adams, Deputy Frantz, Mrs. Kusiak, Lt. Dube, Mr. Bennek, Officer Crum, Mrs. Deplatchet, Sergeant Ruff, Officer Arnold, Officer Diraimo, Captain Sissem, Heather Dechantz, Superintendent Clark, Mrs. Smock, Mr. Snider, Officer

---

[1] Plaintiff is currently incarcerated at SCI-Phoenix.

McClelland, Dr. Halligan, PA Stroup, PA Chuzie-McDowell, Psychiatrist Gottesman,[2] Psychiatrist Renburg, Correct Care Solution LLC ("Correct Care"), Mental Health of America, and Dr. Herbic. Id. ¶¶ 5-30.

Presently pending before the Court is a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Dr. Gottesman and Dr. Renberg (ECF No. 15). Plaintiff responded to the motion on July 27, 2018. ECF No. 20. For the reasons set forth below, the motion will be granted in part and denied in part.[3]

## I.     Factual Background

On August 9, 2017, Plaintiff, a black male with a documented history of suicide attempts and self-harm, returned to SCI-Albion after having been temporarily transferred to another institution to attend a civil trial. ECF No. 5 ¶ 32. Plaintiff avers that it was "widely known" by prison officials and medical staff, including Dr. Renberg and Dr. Gottesman, that his stint away from SCI-Albion was occasioned by his own lawsuit against the Pennsylvania Department of Corrections ("DOC"). Id. ¶¶ 31-33. According to Plaintiff, this knowledge stemmed, in part, from the fact that inmate medical charts at SCI-Albion contain a "litigation" section listing all prison and medical staff that have been sued by that inmate. Id. ¶ 33.

Plaintiff's Complaint does not contain any factual averments concerning Dr. Gottesman.[4] With respect to Dr. Renberg, his allegations stem from an incident on August 31, 2017, in which

---

[2] Plaintiff's Complaint incorrectly identifies Dr. Gottesman as "Godison."

[3] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

[4] For this reason, Plaintiff concedes that Dr. Gottesman should be removed from this action. ECF No. 20 at 1. Accordingly, all claims against Dr. Gottesman are dismissed, with prejudice.

Plaintiff was forced to move into a new cell, Cell 31.  Id. ¶ 43.  Plaintiff immediately observed that the new cell had "urine, feces, and bloody bandages" on the floor and informed prison officials that he would harm himself if forced to move.  When his threats were ignored, Plaintiff began using a razor blade to cut himself.  Id. ¶ 45.  Several corrections officers responded by violently attacking Plaintiff and forcing him into handcuffs.  Id.  Instead of placing him on suicide watch, however, the prison forced him to move back into the offending cell.  Id.

On September 5, 2017, Plaintiff began cutting himself in his cell again.  Id. ¶ 46. Plaintiff was placed on suicide watch and evaluated by Dr. Renberg, Dr. Anderson, and Adams. Id.  Despite Plaintiff's threats of continued self-harm if forced to occupy Cell 31, Dr. Renberg (along with Adams and Dr. Anderson) forced Plaintiff to return to that cell.  Id.  Plaintiff resumed cutting himself with a double-bladed razor while Dr. Renberg, Dr. Anderson and Adams "looked on and [did] nothing."  Id.

Based on this incident, Plaintiff avers that Dr. Renberg failed to provide adequate treatment for his serious mental health disorder.  Id. ¶ 47.  Plaintiff maintains that Dr. Renberg should have kept him in isolation, housed him in the mental health unit, placed him on razor restriction, performed a psychiatric review, and coordinated visits from mental health staff following any incident of self-harm.  Id.  Plaintiff also accuses Dr. Renberg of withholding treatment because of Plaintiff's litigation history.

## II.     Standards of Review

### 1. *Pro se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520-521 (1972).  If

the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. <u>Boag v. MacDougall</u>, 454 U.S. 364 (1982); <u>United States ex rel. Montgomery v. Bierley</u>, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); <u>Smith v. U.S. District Court</u>, 956 F.2d 295 (D.C. Cir. 1992); <u>Freeman v. Dep't of Corrections</u>, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. <u>Gibbs v. Roman</u>, 116 F.3d 83 (3d Cir. 1997). <u>See, e.g.</u>, <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard); <u>Markowitz v. Northeast Land Co.</u>, 906 F.2d 100, 103 (3d Cir. 1990) (same).

### 2. Motion to dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 1216, pp. 235-236 (3d ed. 2004)). <u>See also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957)). In making this determination, the court

must accept as true all well-pled factual allegations in the complaint and views them in a light

most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir.

2002).

While a complaint does not need detailed factual allegations to survive a motion to

dismiss, a complaint must provide more than labels and conclusions. Twombly, 550 U.S. at 555.

A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v.

Allain, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a

plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub.

Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v.

Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal

conclusions disguised as factual allegations. Twombly, 550 U.S. at 555 (citing Papasan v.

Allain, 478 U.S. 265, 286 (1986)). See also McTernan v. City of York, Pennsylvania, 577 F.3d

521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions.").

Expounding on the Twombly/Iqbal line of cases, the Third Circuit has articulated the

following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a
> claim.' Second, the court should identify allegations that, 'because they are no more
> than conclusions, are not entitled to the assumption of truth.' Finally, 'where there
> are well-pleaded factual allegations, a court should assume their veracity and then
> determine whether they plausibly give rise to an entitlement for relief.'

Burch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (quoting Santiago v.

Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense."

Iqbal, 556 U.S. at 679.

## III.    Analysis

As noted above, Plaintiff primarily asserts that Dr. Renberg was deliberately indifferent to his serious mental health needs and that his indifference amounted to a violation of the Eighth Amendment.  Plaintiff also contends that Dr. Renberg violated the First Amendment by withholding treatment in retaliation for Plaintiff's prolific litigation history.  Finally, Plaintiff invokes the Americans with Disabilities Act, the Due Process Clause of the Fourteenth Amendment, and medical negligence, although it is not clear whether those claims are asserted against Dr. Renberg.

In her motion to dismiss, Dr. Renberg seeks dismissal of all claims.  Each will be addressed below.

### A.    Exhaustion

Before addressing Plaintiff's claims on an individual basis, Dr. Renberg raises administrative exhaustion as a global defense.[5]  It is well-established that the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) (the "PLRA"), requires a prisoner to exhaust any available administrative remedies before he may bring an action pursuant to 42 U.S.C. § 1983 challenging the conditions of his confinement.  42 U.S.C. § 1997e(a).  The grievance system utilized in Pennsylvania's prison system requires inmates to satisfy a three-step grievance and appeals process.  See Grievance System Policy DC ADM-804; Smith v. Sec. of Pa. Dept. of Corrections, 2018 WL 279363, at *2 (W.D. Pa. Jan. 3, 2018).  First, the inmate must "legibly set forth all facts and identify all persons relevant to his claim in a grievance which will then be

---

[5] Dr. Renberg has attached a number of exhibits to her motion to dismiss in support of her exhaustion defense. Because these documents are external to the pleadings, the Court will convert this portion of her motion into a motion for summary judgment.  Consistent with Renchenski v. Williams, 622 F.3d 315 (3d Cir. 2010), the Court explicitly cautioned Plaintiff that "[the] pending motion may be treated, either in whole or in part, as a motion for summary judgment under Federal Rule of Civil Procedure 56."  ECF No. 17.

subject to 'initial review.'" <u>Smith</u>, 2018 WL 279363, at *2 (citing <u>Spruill v. Gillis</u>, 372 F.3d

218, 233 (3d Cir. 2004)). Second, the initial review must be appealed to the Facility

Administrator for a second level of review. <u>Id</u>. Finally, "the inmate is required to file an appeal

to the Secretary's Office of Inmate Grievances and Appeals ("the Secretary's Office")." <u>Id</u>. All

three stages of review must be completed before a grievance is deemed administratively

exhausted for purposes of the PLRA.

      Critically, the statute also requires "proper exhaustion," meaning that a prisoner's

completion of the administrative review process must also satisfy the applicable procedural rules

of the prison's grievance system. <u>Fennell v. Cambria County Prison</u>, 607 Fed. Appx. 145, 149

(3d Cir. 2015). A procedurally defective administrative grievance, even if pursued to final

review, precludes action in federal court. <u>Id</u>. Apropos to the instant case, the DOC's grievance

procedure requires an inmate to "identify [the] individuals directly involved in the event(s)."

<u>Henry v. Lamoreaux</u>, 2018 WL 3037180, at *3 (W.D. Pa. June 19, 2018) (quoting DC-ADM 804

§ 1.A.11). The Court of Appeals for the Third Circuit has held that this grievance policy

amounts to a requirement to identify the responsible individuals by name. <u>Spruill</u>, 372 F.3d at

234. <u>See</u> <u>also</u> <u>Williams v. Pennsylvania, Dep't of Corrections</u>, 146 Fed. Appx. 554, 557 (3d Cir.

2005) (failure to identify defendants by name in grievances "means that [plaintiff] failed to

exhaust his administrative remedies in accordance with Pennsylvania's grievance process and the

PLRA"); <u>Brown v. Maxa</u>, 2013 WL 1150728, at *7 (W.D. Pa. Mar. 19, 2013) ("Failure to name

a Defendant at any time in the grievance procedure constitutes a procedural default").

      A review of Plaintiff's administrative file with the Secretary's Office of Inmate

Grievances and Appeals ("SIOGA") reveals that only four grievances were properly and fully

exhausted prior to the initiation of this lawsuit: grievance numbers 681732, 694877, 695931, and

697985. ECF No. 16 at 6. Because none of those four grievances mentions Dr. Renberg by name, she maintains that Plaintiff has not properly exhausted any of his claims against her.

Plaintiff, in response, points out that grievance 695931 identifies one of the wrongdoers as the "acting Psychiatrist." ECF No. 20 at 2; ECF No. 16-3 at 56 (stating that Plaintiff informed "Deputy Adams, Psychologist Anderson and the acting Psychiatrist that [he] would cut up" if released from suicide watch and placed back in Cell 31). Plaintiff identifies Dr. Renberg as the acting psychiatrist on that date, although he did not know her name at the time. Plaintiff maintains that he provided the DOC with ample notice as to her identity for purposes of exhaustion by identifying her by her title.

In Spruill, the Third Circuit noted that the purpose of the identification requirement is to "put the prison officials on notice of the persons claimed to be guilty of wrongdoing." 372 F.3d at 234. As such, an inmate's failure to identify a defendant by name can be excused where the person's identity is "fairly within the compass of the prisoner's grievance." Id. Consistent with this principle, courts have frequently refused to dismiss claims for failure to identify a defendant by name "where it was clear that prison officials knew of defendant's involvement from the context of the grievance." Sanders v. Beard, 2013 WL 1703582, at *7 (M.D. Pa. Apr. 19, 2013) (excusing plaintiff's failure to name prison maintenance personnel by name because he identified them by position and it was not practicable that he would be aware of their identities) (citing Williams v. Beard, 482 F.3d 637, 640 (3d Cir. 2007)). See also Martin v. Secretary of Corrections, 2018 WL 1158250, at *4 (W.D. Pa. Mar. 5, 2018) ("Because it was not practicable for Martin to identify the Defendants, he has not [failed to exhaust] his claims."); Robinson v. Johnson, 343 Fed. Appx. 778 (3d Cir. 2009) (holding that inmate did not fail to exhaust a claim

8

challenging a policy where the defendants did not meet their burden of demonstrating that it was practicable for the inmate to identify them as the relevant policymakers).

Such is the case here. Plaintiff states that he identified Dr. Renberg by title because he could not practicably obtain her name from prison officials. ECF No. 20 at 2. As in each of the cases cited above, Plaintiff's use of Dr. Renberg's title placed her identity "fairly within the compass of [his] grievance." <u>Spruill</u>, 372 F.3d at 234.[6] Dr. Renberg's motion for summary judgment will be denied as to the allegations set forth against in grievance 695931.

**B. Eighth Amendment Deliberate Indifference**

Plaintiff's first claim – and the heart of his allegations against Dr. Renberg – concerns the adequacy of Dr. Renberg's response to Plaintiff's serious medical needs. To establish a violation of his constitutional right to adequate medical care, a plaintiff is required to allege facts that demonstrate: (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999). Such indifference may be manifested by, *inter alia*, an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).

At this stage in the proceedings, Plaintiff's allegations against Dr. Renberg are sufficient to proceed to discovery. The first element of his Eighth Amendment claim is established by his allegation that he suffered from a severe mental health disorder that caused him to harm himself

---

[6] Should evidence emerge to refute Plaintiff's claim (by, for example, demonstrating that Dr. Renberg was not the acting psychiatrist on the date in question), this issue may be revisited by way of a fully-supported motion for summary judgment.

with razor blades and otherwise display suicidal tendencies.  See, e.g., Palakovic v. Wetzel, 854 F.3d 209, 228 (3d Cir. 2017) (history of self-harm and suicide attempts evinced serious medical disorder); Estate of Kempf v. Washington County, 2018 WL 4354547, at *13 (W.D. Pa. Sep. 12, 2018) (vulnerability to suicide is a serious medical need).   His allegation that Dr. Renberg "looked on" idly as Plaintiff cut himself with a razor blade falls squarely within the scope of an "intentional refusal to provide care."  Durmer, 991 F.2d at 68; Palakovic, 854 F.3d at 228 (knowledge of the need for medical care may not be accompanied by the "intentional refusal to provide that care") (quoting source omitted).  The same is true of Plaintiff's contention that Dr. Renberg failed to take any steps to determine whether he was at risk of suicide or further self-harm.  Freedman v. City of Allentown, Pa., 853 F.2d 1111, 1115 (3d Cir. 1988) ("When facts have been pled which, if proven, would demonstrate that the prison officials actually knew of the suicidal tendencies of a particular prisoner, and ignored their responsibility to take reasonable precautions, the complaint has survived dismissal.").  Of course, Plaintiff will ultimately have to meet a high bar in order to survive summary judgment on these claims, given the strong presumption against second-guessing the medical judgment of prison physicians and psychiatrists.  See, e.g., Palakovic, 854 F.3d at 228.  At this stage in the proceedings, however, his allegations are sufficient to state a claim.  Dr. Renberg's motion to dismiss Plaintiff's Eighth Amendment claim will be denied.

### C.  First Amendment Retaliation

Plaintiff next suggests that Dr. Renberg's refusal to provide care stemmed from retaliatory animus.  In order to establish illegal retaliation for engaging in protected conduct, a plaintiff must allege that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was

a substantial or motivating factor in the decision to take the adverse action. <u>Watson v. Rozum</u>, 834 F.3d 417, 422 (3d Cir. 2016) (citing <u>Rauser v. Horn</u>, 241 F.3d 330, 333-34 (3d Cir. 2001)). An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. <u>Allah v. Seiverling</u>, 229 F.3d 220, 225 (3d Cir. 2000) (quoting <u>Suppan v. Dadonna</u>, 203 F.3d 228, 235 (3d Cir. 2000)). Retaliatory motive can be inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link. <u>Id</u>. (citing <u>Lauren W. ex rel. Jean W. v. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir. 2007)).

In the instant case, Plaintiff alleges that Dr. Renberg refused to provide necessary treatment for his mental health condition "in retaliation for Plaintiff exercising his 1st Amendment right to litigate a civil action which information was accessible to [Defendants, including Renberg] due to there being a litigation/legal section in Plaintiff's medical chart." ECF No. 5 ¶ 48. The first two elements are not in dispute; filing a lawsuit is clearly a constitutionally protected act, <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003), and failing to provide necessarily medical treatment amounts to an adverse action. <u>Baez v. Jin</u>, 2018 WL 4017685, at *3 (W.D. Pa. July 18, 2018) (refusal to provide necessary medical treatment is an adverse action). Plaintiff has failed, however, to allege a causal link between his prior litigation and Dr. Renberg's refusal to provide medical care.

As noted above, retaliatory motive is typically inferred from either an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action or a pattern of antagonism coupled with suggestive timing. Plaintiff has not alleged any facts in support of either approach. With regard to the temporal element, Plaintiff avers that he had a history of litigation against the DOC, but fails to pinpoint when his most recent protected activity

took place.  He has not identified any facts from which the Court might infer that Dr. Renberg, who only appears in Plaintiff's Complaint in connection with a single incident, had a history of treating Plaintiff with antagonism.  Finally, Plaintiff does not allege that his prior litigation actually involved Dr. Renberg or anyone with whom Dr. Renberg was associated.  Courts have consistently rejected retaliation claims "against one defendant based on [protected activity] against another [individual]" for lack of retaliatory motive.  Victor v. Lawler, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), aff'd, 565 Fed. Appx. 126 (3d Cir. 2014).  As explained by one court, "there is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others."  Evans v. Rozum, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009).  See also Royster v. Beard, 308 Fed. Appx. 576, 579 (3d Cir. 2009) (affirming summary judgment in favor of defendant on plaintiff's claim that he was retaliated against by a defendant who was not the target of his protected activity); Horan v. Collins, 2016 WL 5030468, at *6 (M.D. Pa. Aug. 8, 2016) (drawing no inference of causation where plaintiff's protected activity was not directed at any defendant).

In short, Plaintiff has failed to adequately plead a causal relationship between his protected activity and Dr. Renberg's medical care.  Plaintiff's First Amendment retaliation claim will be dismissed.

### D.  Americans with Disabilities Act

Plaintiff next invokes the ADA, albeit in conclusory fashion.  In pertinent part, Title II of the ADA provides that "no individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To state a claim under Title II, "a plaintiff must show (a) that he has a disability, (b) that he was

either excluded from participation in or denied the benefits of some entity's services, programs, or activities, and (c) that such exclusion, denial of benefits, or discrimination was by reason of h[is] disability." <u>Matthews v. Pennsylvania Dept. of Corr.</u>, 613 Fed. Appx. 163, 167 (3d Cir. 2015). None of the allegations in the Complaint implicate any of these elements. Moreover, "[n]early every court that has addressed the question appears to have held that Title II does not authorize suits against government officers in their individual capacities." <u>Williams v. Hayman</u>, 657 F.Supp.2d 488, 502 (D.N.J. 2008); <u>see also</u> <u>Bowens v. Wetzel</u>, 674 Fed. Appx. 133, 136 (3d Cir. 2017) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim."). Plaintiff's ADA claim will be dismissed.

### E. Medical Negligence

Although it is unclear from the Complaint, it appears that Plaintiff may be asserting a state law claim for medical negligence. To the extent that this is the case, his claim must be dismissed because he has failed to file a certificate of merit.

Rule 1042.3 of the Pennsylvania Rules of Civil Procedure requires a plaintiff in a medical malpractice action to file a certificate of merit with the complaint, or within 60 days after the filing thereof, attesting that there is a reasonable probability that the medical care described in the complaint fell outside of acceptable professional standards. The Third Circuit has held that Rule 1042.3 is substantive law that must be applied by federal courts under <u>Erie R.R. v. Thompkins</u>, 304 U.S. 64 (1983). <u>See</u> <u>Liggon-Redding v. Estate of Sugarman</u>, 659 F.3d 258, 262-64 (3d Cir. 2011). Thus, for purposes of a motion to dismiss, the Pennsylvania certificate of

merit rule is applied as "controlling, substantive state law." <u>Scaramuzza v. Sciolla</u>, 345 F.Supp.2d 508, 509-10 (E.D. Pa. 2004).

"[A] plaintiff's failure to comply with Rule 1042.3 requires dismissal of any malpractice claim." <u>Bennett v. PrimeCare Medical, Inc</u>., 2018 WL 6072126, at *10 (M.D. Pa. Sept. 14, 2018). However, "Pennsylvania practice expressly provides plaintiffs with notice of Rule 1042.3's requirements and an opportunity to cure any failure to file a certificate of merit before a matter is dismissed." <u>TranSystems Corp. v. Hughes Associates, Inc</u>., 2014 WL 6674421, at *5 (M.D. Pa. Nov. 24, 2014); <u>Schmigel v. Uchal</u>, 800 F.3d 113, 124 (3d Cir. 2015) ("The condition of thirty days' notice prior to seeking dismissal of an action for failure to comply with the [certificate of merit] regime is substantive and must be applied in federal court.").

In the instant case, Dr. Renberg provided Plaintiff with the requisite notice on July 16, 2018. <u>See</u> ECF No. 15. Plaintiff failed to file the required certificate. Under such circumstances, dismissal is appropriate. <u>Bennett</u>, 2018 WL 6072126, at *10.

### F. Fourteenth Amendment Due Process Claim - Inadequate Medical Care

Finally, Plaintiff appears to suggest that the same conduct underlying his First and Eighth Amendment claims also supports a Fourteenth Amendment violation. However, to the extent that Plaintiff is attacking the adequacy of his medical care under both the Eighth and Fourteenth amendments, the Fourteenth Amendment claim must be dismissed pursuant to the more-specific-provision rule.

As explained by the United States Supreme Court in <u>United States v. Lanier</u>, the more-specific-provision rule provides that, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due

14

process." 520 U.S. 259, 272 n.7 (1997). See also Albright v. Oliver, 510 U.S. 266, 273 (1994)

("Where a particular Amendment provides an explicit textual source of constitutional protection

against a particular sort of government behavior, that Amendment, not the more generalized

notion of substantive due process, must be the guide for analyzing these claims."). Pursuant to

this principle, allegations of inadequate medical care in the prison context must be analyzed

"under the more specific Eighth Amendment standards set forth in Estelle v. Gamble, 429 U.S.

97, 104 (1976)," rather than the more general standards applicable to Fourteenth Amendment

claims. Classen v. Nutter, 2017 WL 6017341, at *7 (E.D. Pa. Dec. 4, 2017). Accordingly,

Plaintiff's Fourteenth Amendment claim must be dismissed as to any allegations of inadequate

medical treatment. See, e.g., Davis v. Pennsylvania Dept. of Corr., 2016 WL 1072911, at *7

(W.D. Pa. Mar. 18, 2016) (dismissing substantive due process claims regarding plaintiff's

medical care because such claims "are more appropriately analyzed under the more specific

Eighth Amendment provision than under the more general and open-ended standard of

substantive due process").


## V.     CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss (ECF No. 15) is

GRANTED in part and DENIED in part. Defendants' motion is granted as to Plaintiff's First and

Fourteenth Amendment claims, his ADA claim, and his medical negligence claim.[7] Defendants'

---

[7] Although Rule 1042.3 compels dismissal of this claim, the Court must do so without prejudice. The entry of a judgment non pros by the prothonotary, which is the outcome contemplated by Rule 1042.3, has no precise analogue in the federal system. In this context, federal courts have held that "[u]nlike dismissal with prejudice, the entry of non pros is a default judgment that does not bar the plaintiff from commencing another suit based upon the same cause of action." Bresnahan v. Schenker, 498 F. Supp. 2d 758, 762 (E.D. Pa. 2007) (quoting Scaramuzza v. Sciolla, 345 F. Supp. 2d 508, 511 (E.D. Pa. 2004)). "Moreover, under Pennsylvania law, a party can seek relief from a non pros dismissing a case under Rule 1042.3 by coming into compliance with the rule, showing that there is a meritorious malpractice cause of action, and providing a reasonable explanation or legitimate excuse for the earlier

motion is also granted as to all claims against Dr. Gottesman.  Defendants' motion is denied as to

Plaintiff's Eighth Amendment claim against Dr. Renberg.  Consistent with the foregoing, the Clerk

is directed to terminate Dr. Gottesman from this action.


/s/ Richard A. Lanzillo_____
RICHARD A. LANZILLO
United States Magistrate Judge

Dated: March 29, 2019

---

non-compliance." Lundy v. Monroe Cty. Corr. Facility, 2017 WL 9362913, *6 (M.D. Pa. Dec. 18, 2018) (citing
Womer v. Hilliker, 908 A.2d 269 (Pa. 2006); Pa. R. Civ. P. 3051)).  Therefore, "[w]hen a plaintiff has failed to
submit a certificate of merit or otherwise indicated that he has retained an expert witness, it is appropriate for a
federal district court to dismiss his professional malpractice claim without prejudice." Donnelly v. O'Malley &
Langan, P.C., 2009 WL 3241662 (M.D. Pa. Oct. 2, 2009) (citations omitted) aff'd as modified sub nom., 370 Fed.
Appx. 347 (3d Cir. 2010).  Plaintiff may yet have recourse on this claim if he can file an appropriate COM and
"demonstrate a reasonable explanation or legitimate excuse for untimely filing." Ramos v. Quien, 631 F. Supp. 2d
601, 612 (E.D. Pa. 2008).