IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TYRONE GREEN, | ) |
| Plaintiff, | ) Case No. 1:18-cv-00093 (Erie) |
| v. | ) |
| SECRETARY WETZEL, et al., | ) United States Magistrate Judge |
| Defendants | ) Richard A. Lanzillo |

## ORDER ON PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff Tyrone Green, a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), filed this pro se civil rights action on pursuant to section 1983. Presently pending before the Court is Plaintiff's motion for appointment of counsel, filed on October 30, 2019, and a related document, filed on November 8, 2019. ECF Nos. 123; 129.

I.   Standard of Review

In *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993), the Third Circuit identified factors to be considered by the district courts in exercising their discretion whether to "appoint" counsel pursuant to 28 U.S.C. § 1915(d).[1] These factors have been affirmed many times as the appropriate bases for review. *See, e.g., Montgomery v. Pinchak*, 294 F.3d 492 (3d Cir. 2002). "As a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and in law." *Tabron* at 155. The court should not appoint counsel unless

---

[1] Although 28 U.S.C. § 1915(d) does not authorize the court to "appoint" counsel, it authorizes the court to "request" an attorney to represent a litigant who is unable to employ counsel on his own. The importance of the distinction was recognized by the Supreme Court in *Mallard v. United States District Court*, 490 U.S. 296 (1989).

1

it appears that the claim has some merit. *Id.* Provided that this consideration is satisfied, the court must then consider the following factors to determine whether to appoint counsel:

1. the plaintiff's ability to present his or her own case;
2. the difficulty of the particular legal issues;
3. the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation;
4. the plaintiff's capacity to retain counsel on his or her own behalf;
5. the extent to which a case is likely to turn on credibility determinations, and;
6. whether the case will require testimony from expert witnesses.

*Montgomery*, at 499 (quoting *Tabron* at 155-157).

The Third Circuit has also recognized that there are significant practical restraints on the district court's ability to "appoint" counsel, including: "the ever-growing number of prisoner civil rights actions filed each year in the federal courts; the lack of funding to pay appointed counsel; and the limited supply of competent lawyers who are willing to undertake such representation without compensation." *Tabron*, 6 F.3d at 157. Additionally, there are many cases in which district courts attempt to appoint counsel but find no attorney willing to accept the appointment:

> [T]he frequent unwillingness of lawyers to accept appointment in such cases is not only a function of the time pressures lawyers face in trying to earn a living in an increasingly competitive field, but also by circulating knowledge of the indignities that some lawyers have been subjected to by certain litigants, including verbal and written abuse, excessive demands and complaints, and malpractice suits. We trust the district judges will be sensitive to such problems in making discretionary decision in the area.

*Id.* at 157 n. 7. The *Tabron* Court also recognized that volunteer lawyer time is extremely valuable and a district court should not request counsel under § 1915 indiscriminately:

> Volunteer lawyer time is a precious commodity ... Because this resource is available in only limited quantity, every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause. We cannot afford that waste.

2

*Id.* at 157.

While this Court would undoubtedly benefit from having capable, experienced counsel available to assist and advise all prisoners before they file suit and to represent all prisoner plaintiffs who survive dismissal (under 28 U.S.C. § 1915(e) or for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure), there are simply not enough attorneys in this District who are willing to undertake such representation. In addition to the factors discussed by the Court of Appeals, this Court recognizes other factors that dissuade attorneys from representing prisoners. Simply interviewing a prisoner client requires a trip to a prison, sometimes at a great distance from the lawyer's office, and frequently a long wait at the prison until the prisoner can be produced for the interview.

The number of attorneys in this District who are available to volunteer to represent prisoners is limited while the number of prisoners who request counsel is high. Moreover, the Erie division of this District does not have a referral system in place, as does the Pittsburgh division, and few attorneys in the local Bar have expressed a willingness to handle these cases. Therefore, this Court must carefully consider all the factors identified by the Court of Appeals as well as any other considerations related to the specific case in exercising its discretion when considering a motion for the "appointment" of counsel.

II. Analysis

In his complaint, Plaintiff alleges that various Defendants violated his First, Eighth, and Fourteenth Amendment rights by engaging in retaliatory actions, denying him adequate medical care, and a host of other issues. *See* ECF No. 5. However, in his Motion for the Appointment of Counsel, Plaintiff asserts a wholly new and independent basis for potential relief: the alleged

3

discovery that he contracted Hepatitis A, that prison officials knew of this infection, and that they failed to inform him thereof.

In response, Defendants submitted the affidavit of Dr. Stephen Wiener, the Medical Director at SCI Phoenix. ECF No. 133-1. The affidavit states that Dr. Wiener reviewed Plaintiff's filings, the basis for Plaintiff's belief that he contracted Hepatitis A, and the relevant laboratory reports. After careful analysis thereof, Dr. Wiener stated that Plaintiff does not have an active infection of any type of Hepatitis virus. *Id.* Dr. Wiener attributes Plaintiff's confusion to a misinterpretation of laboratory results, which indicated that Plaintiff tested positive for certain antibodies related to Hepatitis A. *Id.* The presence of these antibodies means that Plaintiff either (1) was vaccinated for Hepatitis A, or (2) contracted Hepatitis A at a prior time, but no longer is infected. *Id.*

Before proceeding to the *Tabron* factors, the Court notes that the threshold issue in the court's determination of whether to appoint counsel is whether Plaintiff's claim is potentially meritorious. *See Tabron*, 6 F.3d 147 at 155 ("As a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and in law.") Here, Plaintiff has framed his request for counsel as one that seeks assistance with a "new matter." Indeed, it is unclear to the Court how a Hepatitis infection would constitute a basis for the appointment of counsel in this case. Potentially, Plaintiff seeks counsel's assistance to determine whether to initiate a new civil action. Regardless, given the information provided in Dr. Wiener's affidavit, the Court finds that Plaintiff's claim that he contracted Hepatitis A and that prison personnel failed to disclose the infection lacks any merit. Thus, it does not provide a basis for the appointment of counsel. Because Plaintiff has failed to meet the threshold determination of

whether his claim has arguable merit, the Court need not, and does not, address the remaining *Tabron* factors.

Plaintiff's motion for appointment of counsel (ECF No. 123) and his related filing (ECF No. 129) are therefore **DENIED**, without prejudice. Plaintiff may renew his motion, if he so desires, should Plaintiff's claim continue to remain viable at subsequent stages of this litigation, based upon the factors handed down in *Tabron*.

It is so ordered.

RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE

Entered this 26th of November, 2019.